*In re* CARLOS MARTÍNEZ TEXIDOR, HÉCTOR CUPRILL HERNÁNDEZ, ANTONIO BAUZÁ TORRES y RAFAEL ELVIRA CABALLERO.

*Números:* AB-91-25
AB-91-26
AB-91-27
AB-91-28

*Resueltos:* 30 de junio de 1992

*Carlos Martínez Texidor, pro se; Héctor Cuprill Hernández, pro se; Antonio Bauzá Torres, pro se; Rafael Elvira Caballero, pro se.*

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

La observancia o no de los principios éticos que informan los cánones de conducta profesional "sirven para mensurar el nivel y jerarquía de cada foro ...". R.H. Viñas, *Ética y derecho de la abogacía y de la procuración*, Buenos Aires, Eds. Pannedille, 1972, pág. 261. "[L]a cordialidad, la amabilidad, deben ser el estilo de trato con los colegas. Si el ardor de las defensas, en determinadas circunstancias, acaloran los ánimos y provocan distanciamientos, ello no debe perdurar; sobrevenida la calma reflexiva, debe reanudarse sin demora ese estilo, para mantener la dignidad y jerarquía de la profesión." Íd., págs. 262–263.

I

Estas quejas juradas toman como trasfondo inmediato la vista en que se argumentó una moción de inhibición suscrita por el Lcdo. Alex González, a nombre de la Autoridad de Carreteras, contra el Juez Hon. Gustavo A. Rodríguez Maldonado, quien preside en el Tribunal Superior, Sala de Ponce, el complicado proceso *In re Autopista* (Civil Núm. 86-660 y otros). Expongamos los señalamientos más importantes.

*AB-91-25*

En ésta, el licenciado González aduce que el Lcdo. Carlos Martínez Texidor, el 9 de agosto de 1991, en su argu-

mentación oral "lanzó un vicioso ataque personal al abogado suscribiente que puede violentar la conducta ética de un colegiado". Lo acusó "de perjurio, insinuó en sus palabras que este abogado le había certificado falsedades al Tribunal Superior de Puerto Rico, Sala de Ponce. Además, el abogado querellado, instó una persecución maliciosa al solicitarle al Tribunal que enjuiciara a este abogado por perjurio, que en ese momento encontrara causa probable y ordenara se pusiera en función la maquinaria criminal judicial que en otras palabras significa se ordenara el arresto del suscribiente. Entendemos que lo anterior constituye un ataque vicioso, ya que el asunto en una Moción de Inhibición es uno entre el Magistrado que preside y el abogado y/o la parte que solicita la recusación del mismo. No podemos entender o encontrar justificación en el ataque a este abogado, ya que la Moción de Inhibición *no iba dirigida* al representante del Lcdo. Martínez Texidor, Autoridad de Energía Eléctrica y Puerto Rican-American Insurance Company (PRAICO). Lo único que puede haber movido a dicho abogado fue entablar un ataque vicioso y malicioso, sin justa causa, contra el suscribiente; entendemos dicha actuación debe ser sancionada".

El licenciado González invoca los Cánones 29 y 35 del Código de Ética Profesional.[1]

Además, el licenciado González alega que el "Lcdo. Mar-

---

[1] *"Canon 29. Cuestiones personales entre abogados*

"Los clientes, no los abogados, son los litigantes. Cualquier rencor que exista entre los clientes no debe afectar la conducta de los abogados entre sí ni las relaciones hacia el litigante contrario. Debe evitarse escrupulosamente toda cuestión personal entre los abogados. En el trascurso de un juicio es impropio aludir a la historia personal o peculiaridades individuales o idiosincrasias del abogado adversario. Los coloquios entre abogados que causan dilaciones y provocan disputas deben también evitarse.

"Será altamente impropio de un abogado hacer imputaciones falsas que afecten la reputación y el buen nombre de un compañero. Cuando existan fundados motivos de quejas graves contra colegas, es el deber del abogado someter sus cargos a las autoridades competentes, debiendo utilizar para ellos los medios propios que dispone la ley." Canon 29 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

*"Canon 35. Sinceridad y honradez*

tínez Texidor trató injusta e irrespetuosamente al Ing. David Montañez Dones, representante de la Autoridad de Carreteras en el presente litigio. El Lcdo. Martínez Texidor actuando por animosidad y perjuicio solicitó del Tribunal de igual manera que acusara al Ing. Montañez Dones de perjurio. Manifestó dicho abogado, que el representante de la Autoridad de Carreteras virtió falsedades bajo juramento, por concepto de la declaración jurada que acompañara el suscribiente con la Moción de Inhibición. Choca dicha conducta con el Canon 15 de Etica Profesional [Conducta hacia testigos y litigantes]".

Finalmente, el licenciado González consigna:

> Durante la argumentación de dicha Moción de Inhibición se hicieron expresiones que pueden dar lugar a la existencia de reuniones ex-parte y conversaciones telefónicas de algunos abogados, con el Magistrado que preside la Sala 602 del Tribunal Superior de Ponce, Honorable Gustavo A. Rodríguez Maldonado, durante el proceso del juicio *In Re: Autopista*, e inclusive con posterioridad a la radicación de la Moción de Inhibición.

En su *contestación*, el licenciado Martínez Texidor alude a que el licenciado González, a raíz de someterse una estipulación transaccional, la impugnó y en su escrito "expresó que el derecho de recobro de la Autoridad de Energía Eléctrica de Puerto Rico y la Puerto Rican American Insurance Company son *puras alucinaciones del opio*, implicando por tanto, que tanto el abogado suscribiente, quien redactó el

---

"La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

"No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.

"El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas. El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso es también altamente reprochable." Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

documento transaccional con los abogados de los demandantes habían hecho uso de opio, y que este acuerdo era el reflejo de la condición en que se encontraban al momento de la redacción del documento."

Señala, además, que "se quejaron y el tribunal de instancia prohibió que se consumieran bebidas embriagantes durante las reuniones entre abogados y los recesos de almuerzo; que la situación fue muy delicada y laxa, y otras provocaron reuniones del Honorable Juez separadamente con los abogados de los demandantes, con los abogados de los demandados y en conjunto con todos los abogados".

Alude a que sus expresiones respondieron a que tanto la Autoridad de Carreteras como Tito Castro Construction Corporation, a través de sus respectivos abogados, siempre postularon que no existían unos documentos importantes relacionados con la construcción del puente sobre el Río Coamo (Planos de inspección, planos y fotocopias), lugar en que ocurrieron las muertes que motivan las reclamaciones. No obstante esa negativa, durante las vistas del caso se logró producir unas fotografías aéreas tomadas bajo la custodia de Tito Castro Construction Corporation. Ello suscitó el incidente que motivó que el juez ordenara a la Autoridad de Carreteras producir sus archivos inactivos del almacén Bo. Palmas, Cataño, y la Autoridad de Carreteras inusitadamente trajera cinco (5) furgones (Vans) y más de treinta (30) cajas al tribunal.

A juicio del licenciado Martínez Texidor, la moción de inhibición fue "viciosa, caprichosa, dislocadora, trastocadora, insostenible y que constituía una crasa violación a los cánones de ética profesional ...". La moción tuvo el efecto inmediato de paralizar los procedimientos; que la Hon. Leyda González Degró, Juez Administradora, mediante Resolución de 13 de mayo de 1991, amonestara fuertemente el proceder del licenciado González por expresiones falsas y faltar a su honradez profesional, y que el Juez Superior,

Hon. Julio Alvarado Ginorio, oportunamente declaró sin lugar la inhibición.

Además, el licenciado Martínez Texidor expone que su proceder respondió al legítimo criterio de que el ingeniero Montañez Dones había dado una declaración falsa. La presentación de la moción de inhibición por el licenciado González, a la luz de lo expuesto, lo llevó a hacer su señalamiento de que habían violado el Código Penal, Art. 225 (33 L.P.R.A. sec. 4421), perjurio. Finalmente, imputa que la queja del licenciado González es "viciosa, caprichosa, negligente, injusta y ofensiva y que ello es consecuencia de la continua e ininterrumpida conducta del Lcdo. González en el proceso que nos ocupa. *A nuestro juicio, es la conducta del Lcdo. Alex González la que está reñida con los Cánones de Etica Profesional, quien debe ser investigado, y a quien se le deben imponer, las sanciones disciplinarias más efectivas y drásticas*". (Énfasis suplido.)

El licenciado González replicó. Se opuso a que se prescinda del juramento al licenciado Martínez Texidor, si éste finalmente desea quejarse. Enfatiza que las injustas acusaciones de perjurio de que fue objeto fueron predicadas en la declaración jurada del testigo ingeniero Montañez Dones, unida a la Moción de Inhibición. En lo pertinente, dicho testigo declaró que en la vista de 2 de mayo de 1991 "escuch[ó] al Juez Rodríguez Maldonado expresar su conclusión de que la Autoridad de Carreteras y sus oficiales y abogados habían y estaban ocultando, suprimiendo, evidencia en este caso. No habiendo visto ni escuchado prueba alguna a ese efecto considero esto una determinación perjudicial a los intereses de la Autoridad de Carreteras, iniciada por una parcialidad favoreciendo a la parte demandante y la Autoridad de Energía". Para sostener la veracidad de lo expuesto por el ingeniero Montañez Dones, reproduce lo siguiente:

LCDO. MARTÍNEZ TEXIDOR:

Su señoría, el compañero Auld y el ingeniero Montañez sabían específicamente qué documentos iban a buscar porque eso surgió a preguntas del señor Allende, específicamente los "log books" de las operaciones diarias de la construcción y supervisión de Carreteras a la construcción de ese tramo, que es vital para este caso. Cuatro días han estado su señoría, para traer a dos personas que lo más probable han venido de la mejor buena fe y cumpliendo órdenes y no producen esos documentos, ¿aquí que es lo que está pasando? Uno se tiene que molestar porque da la impresión de que están escondiendo evidencia, por más que el compañero diga que no, esa es la impresión que están causando.

HON. JUEZ:

Sin duda, sin duda. T.E., pág. 94.

El licenciado González nos señala que su Moción de Inhibición cumplió con las normas jurisprudenciales (*In re Cardona Álvarez*, 116 D.P.R. 895, 906 (1986)); no usa lenguaje ofensivo ni impropio. En torno a la moción que motivó la resolución de la Honorable Juez González Degró, nos aduce que la misma se limitó a consignar su apreciación de los trámites.

Desconoce de quejas al juez sobre situación relativa al consumo de bebidas alcohólicas por varios letrados. Nos refiere a un sólo incidente en que se aclaró en una vista, a solicitud del Lcdo. Héctor Lugo Bougal, que el Lcdo. Miguel Limeres Grau estaba enfermo y tomando el medicamento *Robitusin PE*.

Respecto al escrito en que alude a las previas "alucinaciones del opio", el licenciado González nos remite a la Minuta de 8 de noviembre de 1990, *en la que explicó que no quería ofender a nadie y retiraba esa moción*. Surge que el Honorable Juez Rodríguez Maldonado *eliminó* esa frase, pero que el licenciado Martínez Texidor se opuso "porque pensa[ba] elevar este asunto al Tribunal Supremo separadamente, mientras no vamos a renunciar a eso".

Por último, incorpora expresiones de las Lcdas. Wilda Joy Nin y Rebecca De León Ríos sobre reuniones entre el juez y los abogados.(²)

El licenciado Martínez Texidor, a su vez, contesta esta comparecencia "por razón de que el Lcdo. Alex González está tergiversando los hechos y continúa con su práctica de citar selectivamente aquello que le conviene de documentos relacionados con estos asuntos".

Nos dice:

> No vamos a repetir el contenido de nuestra contestación a la queja a pesar de que el Lic. Alex González en el segundo párrafo de su comunicación expresa que nuestra contestación es un futil intento de querellarnos contra el Lic. González y que nuestra contestación no tiene contenido, amén de reiterar su acusación en la violación de los cánones señalados en la querella por el Lic. González.
>
> En nuestra contestación a la queja presentada por el Lic. Alex González fui claro en el sentido de que estamos en disposición de probar cada uno de los hechos reflejados en nuestra contestación y que al hacer las expresiones sobre las violaciones

---

(²) Licenciada Nin:

"El ambiente que ha permeado todo este juicio y que yo he visto personalmente ha sido tan *relajado*, Señor Juez, que ha dado lugar a que una parte haya tenido que radicar una moción de inhibición. Me da pena. Yo nunca lo he hecho y no estoy diciendo que he sufrido o no he sufrido porque no me afecta como parte, pero ciertamente los procedimientos a mi juicio no son lo que se deben llevar en la sala de un Tribunal de Justicia del Estado Libre Asociado de Puerto Rico. *Más aún, hay abogados aquí que se han expresado por escrito, con unas alabanzas increíbles hacia el Juez que la parte privada y fuera de sala de muy impropia.* Y esa es la situación. Yo creo que este juicio *desgraciadamente no se ha conducido como se debe conducir y yo creo*, sin que en eso está suscribiendo necesariamente la posición de la Autoridad de Carreteras, pero *que ellos tienen sus razones válidas para haber presentado esa moción.*"

Licenciada De León:

"*Y yo puedo dar fe de que el procedimiento en el caso de la autopista ha estado verdaderamente viciado, y demasiado relajado.* Yo no estoy suscribiendo la posición de la Autoridad de Carreteras ni de nadie, porque el Estado, nosotros entendemos, no debe ser parte en este pleito. Y lo fundamentamos objetivamente. Fue declarado sin lugar y ya llegará el momento en que otros foros pasarán juicio sobre nuestro argumento, pero ciertamente los procedimientos han dado margen a que pensemos en que algo está fallando. *No sabemos si es el juez o no sabemos si son los abogados, pero sí podemos decir que han habido reuniones ex parte entre los abogados donde esta abogada ha sido excluída de reuniones. De eso sí yo puedo dar fe.* Durante los cinco meses que llevo viniendo a Ponce día tras día. Creo que hay que ponderar detenidamente sobre lo que he señalado." (Énfasis suplido.)

a los Cánones de Etica por parte del Lic. González, estábamos ejerciendo un deber legal impuesto por los Cánones de Etica Profesional, según reza el Canon 38 al considerar este cuerpo legal que los abogados son funcionarios judiciales. Como funcionarios judiciales estamos en la mejor disposición de establecer con certeza y seriedad todos los hechos expuestos en nuestra contestación a la queja. Si acaso el Honorable Tribunal Supremo de Puerto Rico decide investigar la queja a fondo, tenemos a nuestra disposición todas y cada una de las transcripciones que sostienen los hechos expuestos por nosotros en nuestra contestación. Esas transcripciones están a disposición del Honorable Tribunal Supremo de Puerto Rico de igual manera.

Nos expone que

"*...no tiene forma de probar que dichos documentos existen, máxime cuando a petición de la Autoridad de Carreteras de Puerto Rico*, los cinco furgones que habían sido colocados en la carretera frente al Centro Judicial de Ponce, y las treinta y pico de cajas que por orden del Tribunal produjo la Autoridad de Carreteras de Puerto Rico cuando se celebraba la vista en su fondo de este caso, fueron retirados. A ninguno de los abogados, se le permitió acceso a éstos, excepción hecha de los abogados a la Autoridad de Carreteras."

Postula que la "existencia de dichos documentos no requiere prueba de parte alguna, por cuanto los propios testigos y funcionarios de la Autoridad de Carreteras de Puerto Rico declararon bajo juramento en contrainterrogatorio que dichos documentos existen".

Reitera que el Lcdo. González faltó a la "verdad por cuanto suscribió la moción de inhibición que pretendía estar sostenida con la declaración jurada del Ing. Montañez y que conforme a nuestro ordenamiento jurídico la firma de un abogado en un documento constituye un juramento del abogado que lo suscribe. El Lic. Alex González al certificar la moción de inhibición acompañada por la declaración falsa se colocó en la misma posición del Ing. Montañez que había manifestado haber escuchado al Honorable Juez Gustavo Rodríguez hacer la manifestación referida precedentemente. Ello no tiene relación alguna con la existencia o no de los documentos que pretende el Lic. González que nos[o]tros produzcamos para establecer su existencia".

Además, reformula su oposición a que se eliminen las palabras alusivas al "opio", y reafirma que las órdenes ju-

diciales que prohíben el uso de bebidas alcohólicas fueron dirigidas al licenciado González. Por último, insiste en que se procese su queja como si estuviese jurada.

El licenciado González nuevamente objeta la falta de juramento e invita que se demuestre si el récord refleja que el Honorable Juez Rodríguez Maldonado le haya llamado "la atención" por motivo de ingerir bebidas alcohólicas.

### AB-91-26, AB-91-27 y AB-91-28

Quejas contra los Lcdos. Héctor Cuprill Hernández, Rafael Elvira Caballero y Antonio Bauzá Torres.

Estas quejas siguen literalmente el mismo formato y contenido. El licenciado González señala que los referidos abogados también le lanzaron "un vicioso ataque personal" al hacerse eco de las manifestaciones del licenciado Martínez Texidor.

Las contestaciones de estos letrados, en todo lo pertinente, básicamente descansan en un mismo planteamiento. Así, en su contestación el licenciado Cuprill Hernández comenta que el licenciado González le imputó "prejuicio" al Honorable Juez Rodríguez Maldonado; que se vio en la obligación de oponerse para defender los intereses de su representado y la honradez e integridad del juez; que el licenciado González observó extrajudicialmente "una conducta grosera y altanera hacia los abogados de los demandantes menospreciándolos y faltándoles el respeto, con sus actitudes, actuaciones y expresiones, mucho de ésto inducido por el uso abusivo y extenso de bebidas embriagantes" (Caso Núm. AB-91-26, Comentarios y reacciones en torno a queja, págs. 5–6); que en dos (2) incidentes el licenciado González llegó "en un avanzado estado de embriaguez y prácticamente incoherente" (íd., pág. 6); que en una ocasión, al desestimarse un acuerdo transaccional, el licenciado González le manifestó que "estaba tan desesperado por transigir que estaba dispuesto a 'dar las nalgas' ". Íd., pág. 6.

Finalmente, aduce que las reuniones del abogado con el Honorable Juez Rodríguez Maldonado se "hizo abiertamente y mediante el acuerdo de las partes (particularmente del Lcdo. González), únicamente con el propósito de coordinar asuntos no relacionados en forma alguna con los méritos del caso, sino meramente con el control del proceso, tales como informar el número de testigos, orden en que declararían y tiempo que durarían sus testimonios. Bajo juramento expresamos que en ningún momento se coment[ó], ni directa ni indirectamente los méritos del caso y que sólo se discutió lo que *abiertamente* se dijo se coordinaría por separado. Un caso de naturaleza compleja como el que nos ocupa requiere este tipo de coordinación y nunca nadie la cuestionó cuando se sugirió que así se hiciera. El Lcdo. González sabe que esto es así y que él fue uno de los promotores activos de esas reuniones de coordinación". (Énfasis en el original.) Caso Núm. AB-91-26, *supra*, pág. 9.

El Lcdo. Rafael Elvira Caballero reproduce la alusión escrita de "puras alucinaciones de opio". Por el tono despectivo, cuestiona el uso de la palabra "carapacho" por el licenciado González. Aduce que la declaración jurada en apoyo de la inhibición fue redacta y dictada por el licenciado González; cuestiona su proceder y pide lo investiguemos.

Por su parte, en *síntesis*, el licenciado Bauzá Torres nos señala que su reacción a la moción de inhibición fue adherise a las expresiones de los otros abogados. Nos indica que el récord no revela el llamado "vicioso ataque personal" de que goza el licenciado González.

## II

De entrada, no es correcto en derecho la posición del licenciado González de que "una Moción de Inhibición en un asunto exclusivamente entre el abogado que solicita la

recusación de un juez y el magistrado al cual se le solicita dicha recusación". Basta señalar, de ordinario, los graves perjuicios económicos que procesalmente representa para cualquier reclamante tener que comenzar un proceso; máxime cuando está adelantado. En este sentido las intervenciones de los abogados de las partes contrarias —licenciados Martínez Texidor, Cuprill Hernández, Elvira Caballero y Bauzá Torres— para oponerse a dicha moción representó un trámite válido; claro está, debieron circunscribirse a argumentos y no a alegaciones y expresiones ajenas al señalamiento. Aclarado este extremo, enjuiciemos los apuntamientos éticos.

■ Reafirmamos una vez más que la preservación del honor y la dignidad de la profesión legal exige una buena relación interpersonal entre abogados. Ello es responsabilidad ineludible de cada togado y conlleva observar con sus compañeros y con el tribunal una actitud respetuosa, sincera, honrada, cordial y de cooperación profesional, velando siempre por el buen ejercicio de la profesión legal. *In re Pagán*, 116 D.P.R. 107 (1985); *In re Roldán González*, 105 D.P.R. 498 (1976); *Deberes del Abogado en Relación con Sus Compañeros y Su Profesión, Criterio General*, Cánones de Ética Profesional, 4 L.P.R.A. Ap. IX.

■ Al amparo de este imperativo de civilidad profesional, es evidente que el uso por un abogado de lenguaje soez, de frases mordaces o insinuaciones devalúa la dignidad de su propio ministerio, pone en entredicho su temperamento y le resta fuerza persuasiva a sus argumentos. De más está decir que la grosería jamás debe resonar o hacer eco en el recinto de un tribunal. *De Latorre v. Alcalde de Carolina*, 104 D.P.R. 523 (1976). A fin de cuentas, la estatura moral e intelectual inherente al ejercicio de la abogacía impone un debate jurídico libre de personalismo y posiciones subjetivas que lo degraden a vulgar diatriba. *García Santiago v. Acosta*, 104 D.P.R. 321 (1975); *Deberes*

*del Abogado para con los Tribunales, Criterio General*, Cánones 9 y 29 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Bajo esta escala valorativa ética, como siempre, resulta un tanto difícil desde este Foro apelativo evaluar cabal y totalmente todos los hechos, sin haber tenido la oportunidad de observar las actitudes, gestos, énfasis, tono de voz y otros factores. Siempre existe el margen de caer en los extremos de enjuiciar leve o severamente la conducta profesional.

No obstante, de los escritos ante nos y de la transcripción parcial de evidencia surge claramente que los protagonistas *principales* de las expresiones escritas e incidentes verbales fueron los licenciados González y Martínez Texidor.[3] Éstos en varias ocasiones olvidaron el respeto mutuo y recíproco a que eran acreedores bajo las normas éticas de civilidad. *Es censurable.* Trasluce de los mismos incidentes una aparente animosidad personal que trasciende las simples discrepancias fácticas y doctrinales naturales en toda litigación. Por sinceros que fueran los señalamientos de ambos abogados en cuanto a los méritos de sus planteamientos y posiciones, la búsqueda de la justicia no justifica tal proceder.

La situación es intolerable y no debe repetirse. En particular, el licenciado González carece de excusas para haber utilizado un lenguaje despectivo y degradante. Por otro lado, el licenciado Martínez Texidor no tiene licencia absoluta para insistir en señalamientos cuyo alcance trasciende la realidad de la dinámica procesal. De todos los abogados hubo una sobre reacción (*over reaction*) a la solicitud de inhibición. A fin de cuentas, se trata de un trámite

---

[3] El señalamiento del licenciado González de que el abogado Martínez Texidor "juramente" la queja en su contra es improcedente. Se trata de una contestación a un trámite bajo la Regla 13 de nuestro Reglamento, 4 L.P.R.A. Ap. I-A. En virtud de la Regla 9 de Procedimiento Civil, 32 L.P.R.A. Ap. III, estimamos cumplido ese requisito.

al cual estamos expuestos todos los jueces del país por distintas razones. No cabe, pues, tratar el asunto como si fuera un ataque per se a la dignidad personal del magistrado Rodríguez Maldonado. El debate forense es mucho más serio y complejo; no permite reducirse a una ecuación tan superficial.

Los licenciados González y Martínez Texidor deben descargar eficientemente sus deberes sin recurrir a este tipo de conducta. Se exponen a que en el futuro actuemos con mayor rigor. A fin de cuentas, el "resguardo de la fama y honor de los colegas, es un benéfico principio que revierte a la larga sobre el abogado que los defienda". Viñas, *op. cit.*, pág. 263.

Por todo lo antes expuesto, amonestamos a los licenciados González y Martínez Texidor. Les apercibimos de que en el futuro deberán dar estricto cumplimiento a las normas éticas de civilidad que encarnan los Cánones 9 y 29, *Deberes del Abogado para con los Tribunales, Criterio General; Deberes del Abogado en Relación con Sus Compañeros y Su Profesión,* Criterio General, y los Cánones 9 y 29 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, o se exponen a que actuemos con mayor rigor.

Con vista a estos pronunciamientos, *se dictará sentencia que ordene una copia de este dictamen a los expedientes personales de todos los abogados comparecientes.*

El Juez Presidente Señor Andréu García y el Juez Asociado Señor Hernández Denton se inhibieron. El Juez Asociado Señor Fuster Berlingeri no intervino.